### Commonwealth v. Hightower

*A. L. Taxis, Jr.*, assistant district attorney, for Commonwealth.

*H. Joseph Harrison*, for defendant.

KNIGHT, P. J., June 24, 1953.—John Hightower was arrested in Philadelphia County for failure to stop at the scene of an accident and operating an automobile without the consent of the owner. At the time of his arrest John Hightower did not have an operator's license or learner's permit issued by the State of Pennsylvania or any other authority empowered to issue licenses to operate motor vehicles on the public highways. Hightower either pleaded quilty or was convicted in the courts of Philadelphia County, and on November 10, 1947, upon certification of his conviction by the clerk of courts of that county, the Secretary of Revenue revoked his operating privileges for the term of one year from October 30, 1947, and defendant was so notified and directed to return his operator's card. He had at that time no operator's card. The notice of revocation states that the action of the Secretary of Revenue was taken under section 614 of the Act of May 1, 1929, as amended by the Act of June 22, 1931.

As of the captioned term and number, Hightower was arrested in Lower Merion Township, charged with operating a motor vehicle after suspension or revocation of his operating privileges. He was given a hearing and the case returned to this court, where a jury trial was waived and the case heard before the writer of this adjudication.

The facts are not in dispute. They are:

Defendant was convicted or pleaded guilty in Philadelphia County to the charges of failure to stop at the scene of an automobile accident and operating a motor vehicle without the consent of the owner. His conviction was certified to the Secretary of Revenue by the clerk of courts of Philadelphia County.

On November 10, 1947, the Secretary of Revenue revoked the operator's privileges of defendant for one year from October 30, 1947.

The Secretary of Revenue held no hearing before revoking the operating privileges of defendant.

On December 22, 1949, defendant did operate a motor vehicle in Lower Merion Township, this county. At that time defendant's operating privileges had not been restored.

Counsel for defendant contends that section 614 of the Act of 1929, supra, applies only to cases in which an operator's license has been issued by the State of Pennsylvania and the Secretary of Revenue under the facts of this case could only suspend defendant's privilege to apply for a license after a hearing and, as no hearing was ever held, his operating privilege was never legally suspended and therefore he is not guilty as charged.

Section 614 of the Act of May 1, 1929, P. L. 905, as amended, provides:

"(a) Upon receiving a certified record, from the clerk of the court, of proceedings in which a person pleaded guilty, entered a plea of nolo contendere, or was found guilty by a judge or jury, of any of the crimes enumerated in this section, the secretary shall forthwith revoke, for a period of one (1) year from the date of revocation, the operating privilege of any such person, and where such person was convicted, or entered a plea of guilty or nolo contendere, of any one of the crimes enumerated in clauses (1), (2), (3), and (4) of this section, . . ."

One of the offenses enumerated in clause 4 supra, is the offense of which defendant was convicted in Philadelphia.

An operator's privilege or license is issued for one year beginning February 1st and ending January 31st. When the legislature made it mandatory for the Secretary of Revenue to revoke operating privileges under section 614 for one year from the *date of revocation*, it necessarily follows that what was re-

voked was not only the existing operator's license but the privilege to apply for a license, otherwise the language of the act is meaningless for it is inconceivable that the legislature intended that the one-year period should only apply to a license that was revoked on the first day it became valid.

When the secretary withdrew or revoked defendant's operator's privilege for one year from October 30, 1947, it meant that he could not apply for an operator's license for the term of one year from that date. Counsel for defendant contends that as defendant never had a license, it was impossible to revoke something which never existed. It is not the license of defendant that was revoked, but his operating privilege. One of his operating privileges which existed at the time of his arrest in Philadelphia was the right or privilege to apply for a license to operate and this privilege or right could be revoked as well as any existing license he may have held.

Counsel for defendant calls attention to the sections of the Act of 1929 as amended which have to do with suspension of operating privileges, particularly section 615.1. We have read these sections with care and have come to the conclusion that they apply to cases not covered or within the scope of section 614, supra.

Several courts have held that when an operator's privilege is revoked or suspended some affirmative action must be taken by the operator to have it reinstated and if he operates before that privilege is reinstated he is guilty of operating after suspension or revocation: Commonwealth v. Krupa, 40 D. & C. 572; Commonwealth v. Gernert, 33 D. & C. 620; Commonwealth v. Buleski, 39 D. & C. 496, Commonwealth v. Sherman, 47 D. & C. 507.

When defendant was arrested in Montgomery County his operator's privilege had not been reinstated, hence it follows that he is guilty as charged.

Counsel for defendant cites two cases which he contends support his view of the case, namely, Commonwealth v. Monk, 49 Dauph. 120 (1941), and Commonwealth v. Sherman, 47 D. & C. 507 (1943). In the first case the court found that the record of the hearing before the Commissioner of Revenue did not show defendant's operating privilege had been suspended or revoked. In the second case, Judge Acheson of Washington County, after calling attention to the above finding in the Monk case, went on and found a defendant guilty of violating section 620(*h*), although his period of suspension had long expired.

Counsel in his brief strongly contends that the term "operating privilege" as used in sections 614 and 620(*h*) of the Act of 1929, supra, as amended, has no reference to the privilege of applying for a license which is referred to solely in section 615-1.

The Vehicle Code of May 1, 1929, P. L. 905, sec. 614, provided, inter alia:

"The Secretary shall forthwith revoke for a period of one (1) year from date of revocation, the *operator's license, or learner's permit* of any person, upon receiving a certified record from the clerk of the court of the conviction of such person of any of the following crimes . . ." (Italics supplied.)

By the Act of June 22, 1931, the words "operator's license or learner's privilege" were stricken out and "operating privilege" substituted.

Section 620(*h*) made it unlawful to operate any motor vehicle upon the highways of the Commonwealth after operator's license or learner's permit is suspended or revoked.

This section was likewise amended by the Act of 1931, supra, by striking out "operator's license or learner's permit" and substituting "operating privilege". If, as defendant contends, sections 614 and 620(*h*) apply and contemplate only operators' licenses

or learners' permits in existence at the time of the revocation, then there was no reason whatever to amend the 1929 Act. We think the legislature meant exactly what it said and the operating privilege included the right to apply for a license.

And now, June 24, 1953, defendant is found guilty of violating section 620(*h*) of The Vehicle Code, as amended, and directed to appear in Courtroom B on Friday, September 11, 1953, at 9 a.m. (E. S. T.) to receive the sentence of the court.